WILLIAM WILLIAMS, Respondent, *v.* THE CITY OF BROOKLYN, Appellant.

*Negligence — a pedestrian stumbling over a stone in a sidewalk — charge as to the liability of the municipality — what verdict is not excessive — refusal of an injured person to submit to an operation advised by his physicians.*

In an action to recover against a municipality for injuries received by the plaintiff in May, 1896, in catching his foot upon an isolated stone in the middle of, and several inches higher than, a sidewalk situate on a populous thoroughfare and much used by the public, there was evidence that two persons had fallen over the stone in March, 1896, and, apparently, another in 1894, and that the attention of a policeman on duty in the neighborhood was called to the condition of the sidewalk in May, 1894.

*Held,* that a charge to the jury that the city was not an insurer of the safety of the streets, but was required to exercise reasonable care, measured by the necessities of the particular locality, and which submitted to them the question whether the walk was or was not reasonably safe, and, if they found it unsafe, whether it had been so long enough for the city authorities to discover it if they had exercised reasonable care in looking after the safety of the streets, was proper;

That the fact that the plaintiff had been attended by a physician more than 200 times, the reasonable value of which services was about $290, and that his earnings had averaged $25 a week, much of which had been lost since the accident, when considered in view of the pain and suffering which he had endured, justified the court in refusing to set aside a verdict for $3,500 as excessive.

*Semble,* that in such a case the plaintiff was not required to submit blindly to professional advice. He was entitled and bound to exercise reasonable judgment, and if his conduct was that of a reasonably prudent man, he was within his rights in refusing to submit to an operation, and could not be charged with negligence in that respect.

APPEAL by the defendant, The City of Brooklyn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 14th day of March, 1898, upon the verdict of a jury for $3,500, and also from an order bearing date the 9th day of March, 1898, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

*Almet F. Jenks* [*R. Percy Chittenden* with him on the brief], for the appellant.

*James C. Cropsey,* for the respondent.

GOODRICH, P. J.:

In the evening of May 20, 1896, the plaintiff, a man fifty-six years old, in company with a friend, was walking southerly along the westerly sidewalk of Hamilton avenue, Brooklyn, near the Gowanus canal bridge, when he stumbled over a large flagstone, nineteen inches wide, which was near the middle of, and several inches higher than, the sidewalk. It was an isolated stone, and appears to have been the relic of some former continuous sidewalk flagging, the nearest flagstone being several feet distant. Evidently the earth had washed away or had been worn away from the stone during a considerable period. The stone stood up above the dirt sidewalk at a height variously estimated by the witnesses. The plaintiff contends that this height was from five to seven inches, while the defendant seems to concede that the height at the place where the plaintiff stumbled was about three and a half inches. This concession was based on the evidence of a civil engineer in the service of the city, who measured the stone in January, 1898, nearly two years after the accident.

There is evidence tending to show that the plaintiff's foot caught under the stone; that he tripped and fell violently on his face and fainted. On recovering consciousness, he had a violent pain in his head, and discovered that there was a bunch as large as his fist above his right groin, and that he had sprained his ankle and skinned his knee. He was taken in an ambulance to the Long Island College Hospital, where he remained ten days, and then had a truss applied to sustain the rupture above the groin. He was attended by his own physician at home, but, as the pain and trouble increased, on January 4, 1897, he returned by his physician's advice to the hospital, where an operation for hernia was performed, and where he remained till March, when he was discharged. At the time of the accident the plaintiff weighed 210 pounds, and when he finally left the hospital after the operation he weighed 124 pounds.

The court refused the defendant's motion to dismiss the complaint and submitted the case to the jury, which found a verdict for $3,500 for the plaintiff. From the judgment entered on this verdict, and an order denying a motion for a new trial, the defendant appeals.

We must assume, under the charge of the court, that the jury found that the plaintiff was not guilty of contributory negligence,

and we are, therefore, brought to the question as to the city's liability by reason of the condition of the place in question.

There was evidence that two persons had fallen over the stone in March, 1896, and apparently another in 1894, and that the attention of a policeman on duty in the neighborhood was called to the condition of the walk in May, 1894. Taken in connection with the other evidence, there was a fair question for the jury as to the length of time the condition of things, as it was at the time of the accident, had existed, and whether the city had constructive notice of the condition, or ought to have known of it. The sidewalk is in a populous thoroughfare, and is much used by the public. It was held in *Farley* v. *The Mayor, etc.* (152 N. Y. 222), that the city was chargeable with the knowledge of its policemen on duty, after the lapse of a reasonable time to enable information to be communicated by them to their superiors. A similar doctrine was announced in *Rehberg* v. *Mayor, etc., of City of New York* (91 N. Y. 137).

In addition to this, it was held in *Pomfrey* v. *Village of Saratoga Springs* (104 N. Y. 459) that actual notice to the proper municipal authorities of a defect is not necessary to charge the municipality with negligence; that the authorities owe to the public the duty of active vigilance, and when a street or sidewalk has been out of repair for any considerable length of time, so that, by reasonable diligence, they could have notice of the defect, such notice may be imputed to them.

In the present case the court instructed the jury that the city was not an insurer of the safety of the streets, but was required to exercise reasonable care, measured by the necessities of the particular locality, and submitted to them the question whether the walk was or was not reasonably safe; and if they found it unsafe, whether it had been so long enough for the city authorities to have discovered it, if they exercised reasonable care in looking after the safety of the streets. This charge was correct, and the verdict settles both questions in favor of the plaintiff.

The learned corporation counsel contends that the jury awarded excessive damages. The court instructed the jury that there could be " no recovery for permanent injury." This leaves us to inquire only as to temporary suffering, loss of wages and medical attend-

ance. There was some evidence tending to show that the hernia antedated the accident, but the court charged that unless the rupture was occasioned at the time of and by the accident there could be no recovery therefor.

It is also contended that the plaintiff, the next morning after the accident, was advised by the hospital surgeons to have an operation for hernia performed, and that he obstinately and unreasonably refused to do so. The plaintiff admits that he was advised to undergo the operation, and made a mistake in not accepting the advice; but the court, at the request of the defendant, charged "that the plaintiff was bound to use ordinary care to cure and restore himself, and to use such methods reasonably within his reach as would make his damage as small as possible. The plaintiff cannot recklessly enhance his injury and charge it to the defendant. The Court: I will charge that. Mr. Chittenden: Also the thirty-fourth. The Court: You mean if the jury believe that the plaintiff declined to act upon the advice of the house surgeon, and declined to submit to an operation for the radical cure of his hernia, the defendant is not chargeable with the consequence of his refusal. I so charge."

This was a statement of the law more favorable to the defendant than was needful, and of this the defendant may not predicate error. The plaintiff was not required to submit blindly to professional advice. He was entitled and bound to exercise reasonable judgment, and if his conduct was that of a reasonably prudent man, he was within his rights in refusing to submit to an operation, and cannot be charged with negligence in that respect. This question was involved in the verdict, and has been found in favor of the plaintiff.

The plaintiff was attended by a physician more than 200 times, and there is evidence tending to show that the reasonable value of such services was about $290, and that the plaintiff's earnings averaged $25 a week, much of which had been lost since the accident. Adding to this the pain and suffering which he endured, we do not think the verdict was excessive.

The judgment must be affirmed.

Judgment and order unanimously affirmed, with costs.