Flynn, J.
In this case, tried before the court without a jury, findings of fact and conclusions of law were waived. Plaintiff’s action is for personal injuries arising out of an accident on February 28, 1955. The plaintiff, while engaged in his duties as a New York City policeman, was in a parked police car on the Grand Concourse in The Bronx when a car owned and operated by the defendant struck his car in the rear. Liability has been conceded by the defendant and we are here concerned with the question of damages. The plaintiff was removed from the scene by ambulance to the Morrisania Hospital, where he remained until his removal to Montefiore Hospital on March 15, 1955. He was discharged from Montefiore Hospital on April 7, 1955. After three months of bed rest at home and several weeks of ambulatory confinement, he returned to light duty on August 25, 1955. He is still on such duty. Presently, he is guarding a vacant building, where the only work required of him is performed sitting at a desk.
From the hospital records and the medical testimony, I find the plaintiff suffered a lacerated herniated low lumbar disc on the left or left midline, traumatic in origin, rendering him partially permanently disabled for lifting or bending. Dr. David Bosworth, an attending surgeon and director in orthopedic and traumatic surgery at St. Luke’s, Polyclinic, Sea View, St. Vincent’s Staten Island and St. Giles, Brooklyn, hospitals testified definitely to the injury and prognosis stated above. Before doing so at the request of the chief surgeon of the police department he had performed a complete physical and partial neurological examination of the plaintiff at his office on April 18, 1955 and a subsequent examination on April 26, 1955. He advised a surgical operation for the removal of the prolapsed herniated disc and then building a fusion of the two or possibly more vertebrae involved to close the opening so no further disc material could exude through it. As used here, fusion means joining permanently two or more vertebrae by *178 bony grafts to fix the spine so as to prevent motion in that portion of the back.
The plaintiff, a married man, and the father of two children, was refreshingly frank on his examination. Dr. Bosworth’s diagnosis, a clinical one, specifically excluded any possibility of simulation. I find it to be the fact.
The defendant during the course of the trial requested that the matter be referred to the impartial medical panel. This was allowed. When the trial was resumed the panel orthopedist, Dr. Leonidas A. Lantzouris, an attending orthopedic surgeon at Presbyterian and other approved hospitals, testified that Dr. Bosworth’s diagnosis was undoubtedly correct when it was made. He found no herniation when he examined but said that on this day the disc material may well have been absorbed. In this connection he felt the symptoms might recur at any time since the opening was not closed, and that an operation was required to correct the condition. He believed the pain afflicting the plaintiff would continue until relieved surgically. He found the plaintiff had a permanent partial disability for lifting or bending resulting from this accident.
According to the credible medical testimony, I find the plaintiff has the herniated disc condition referred to, will suffer pain for the remainder of his life and will be required to wear a lumbrosacral belt for many years. The medical testimony indicates that should the plaintiff submit to the surgery prescribed he would have a sound back. However, the testimony is that the patient stands slightly more than a 10% chance of failure in this type of operation.
It is a general rule that one injured through the negligence of another must exercise ordinary care to effect a cure and to prevent aggravation of the injury but that he is bound to submit to an operation only when a reasonably prudent man under the circumstances would do so (11 A. L. R. 230; Williams v. Brooklyn, 33 App. Div. 539).
A question similar to that with which we are confronted was presented in Matter of Pruszenski v. Edo Aircraft Corp. (275 App. Div. 1015), wherein the Appellate Division, Third Department, upheld as reasonable the refusal of a claimant in a workmen’s compensation case to submit to a corrective operation where he had suffered a herniation of the intervertebral disc at the level of the cervical six and seven. The court there stated: “ Only a question of fact is involved and the evidence indicates that the operation proposed is a serious one which requires the exposure of the spinal cord. While the mortality rate incident to such an operation is said to be only 2%, it also *179 appears that the possibility of relief amounts only to about 57%. Under all the circumstances disclosed it cannot be said as a matter of law that claimant’s refusal to submit to the operation is arbitrary and unreasonable.”
While the orthopedists who testified in this case seemed to feel that the operation prescribed was successful in 88.6% of the cases, Dr. Bosworth’s attention was called to a study by a recognized authority which told of success in only 60% of operative cases using freedom from pain as the criterion. While he recognized the authority cited, he disagreed with these results. Still he assigned a much higher percentage of failure, if more than two vertebrae had to be fused. The number to be fused can only be known definitely after the spine is exposed through surgery.
In any event the operation is a major one. The plaintiff as a reasonable man is justified in not undergoing it. He is a human being, not a statistic. He is now able to walk and get about unassisted although in pain. As a reasonable man he may use these accomplishments as the test of the necessity of an operation. In other words he is justified in trying all other avenues before submitting to surgery of this kind. Disagreements among doctors frequently occur about results to be expected. He need not serve as a guinea pig. For instance, the plaintiff in Matter of Tillow v. Daystrom Corp. (273 App. Div. 1045) was penalized as unreasonable for avoiding a myelogram test. Yet Dr. Bosworth testified in this case concerning such tests: “A. I never use a myelogram and haven’t since the first 28 cases I did in 1937 and 1939 and noted I was getting severe arachnoiditis in some of the cases which was worse than the original condition.”
Accordingly I find as a fact that the plaintiff as a reasonable man properly can refuse and continue to refuse the, major surgery proposed without affecting his right to damages.
There has been no loss of wages as a result of this accident to date. His medical expenses have been inconsequential as they have been and presumably will continue to be borne by the police department. Whether the plaintiff in his condition may continue to be so employed is subject to the department’s procedures. He may be retired at three-quarters pay. This at least puts a floor on his loss of earnings. It is definite, however, that he will not be eligible because of his injury to participate in promotional examinations. Whatever the future brings in his employments it is definite and certain that absenting a serious or major operation, the plaintiff is permanently partially disabled and will endure pain and disability for the remainder *180 of Ms life. The CSO Table of Mortality indicates his average future lifetime at 35.15 years. Keeping all these factors in mind, for his injuries the plaintiff is awarded the sum of $45,000. Judgment accordingly with 15 days’ stay of execution and 60 days to make a case.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.